**STEVEN J. ROTHANS – State Bar No. 106579**
**SCOTT J. CARPENTER – State Bar No. 253339**
**CARPENTER, ROTHANS & DUMONT LLP**
500 S. Grand Avenue, 19th Floor
Los Angeles, CA 90071
(213) 228-0400 / (213) 228-0401 [Fax]
srothans@crdlaw.com / scarpenter@crdlaw.com

Attorneys for Defendant, City of San Bernardino, a public entity

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN GIANG,<br><br>   Plaintiff,<br><br>vs.<br><br>CITY OF SAN BERNARDINO and DOES 1 through 10, INCLUSIVE,<br><br>   Defendants. | Case No: 5:22-cv-00178-JFW-RAO<br><br>**DEFENDANT CITY OF SAN BERNARDINO'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Statement of Uncontroverted Facts and Conclusions of Law]<br><br>Date:  December 12, 2022<br>Time:  1:30 p.m.<br>Courtroom:  7A<br><br>Pre-Trial: Jan. 6, 2023<br>Trial:   Jan. 24, 2023 |

PLEASE TAKE NOTICE that on December 12, 2022 at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 7A of the United States District Court, Central District, located at 350 West First Street, Los Angeles, California 90012, Defendant City of San Bernardino, a public entity, will and, pursuant to Federal Rules of Civil Procedure, Rule 56, hereby does move the Court for summary judgment, or in the alternative partial summary judgment, as to the following claims and issues:

- i -
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1. The City of San Bernardino is entitled to judgment in its favor as to the plaintiff's third claim entitled "Failure to Train" which is brought pursuant to 42 U.S.C. § 1983, where the uncontroverted material facts cannot establish that the City was deliberately indifferent to the training needs of its officers.

2. To the extent that plaintiff's first, second, and fourth claims brought under 42 U.S.C. § 1983 are considered to be against the City, those claims are also subject to summary judgment because the City of San Bernardino, the only named defendant, cannot be liable for this claim where *respondeat superior* liability is not permissible under 42 U.S.C. § 1983 and where there is no evidence that a custom, practice or policy of the City of San Bernardino led to a violation of constitutional rights.

This motion is made after meet and confer efforts pursuant to Local Rule 7-3 that took place October 14, 2022 and thereafter. <u>See</u> Declaration of Steven J. Rothans.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Lieutenant Albert Ramirez, Scott J. Carpenter, and Steven J. Rothans, any matters of which the Court may take judicial notice, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court.

DATED: November 9, 2022         CARPENTER, ROTHANS & DUMONT LLP

/s/ *Scott J. Carpenter*

By: _____
Steven J. Rothans, Esq.
Scott J. Carpenter, Esq.
Attorneys for Defendant
City of San Bernardino

- ii -

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case arises out of a domestic dispute between plaintiff and his roommate on May 12 and May 13 of 2020. During the relevant time period, plaintiff made multiple calls to 911, including regarding baseless claims that San Bernadino Police Department ("SBPD") officers had allegedly raped him. Plaintiff was ultimately arrested and booked for violation of Penal Code section 148.3 (false report of an emergency).

Plaintiff initiated this action against the City of San Bernardino, the only named defendant, alleging that the responding officers falsely arrested him and used excessive force. After the Court dismissed plaintiff's state law claims (Dkt. No. 38), plaintiff's remaining claims as set forth in his Complaint for Damages consist of four federal claims under 42 U.S.C. § 1983 for unreasonable seizure, excessive use of force, failure to train, and violation of the First Amendment. Plaintiff specifically brings only the third claim for failure to train against the City.

The City of San Bernardino (the "City") submits that summary judgment is appropriate here. For starters, the evidence does not (and cannot) support plaintiff's third claim under 42 U.S.C. § 1983 based on a supposed failure to train where there is no evidence demonstrating that the City was deliberately indifferent to the training needs of its officers. The third claim is the only claim that is specifically against the City, and if it fails then the action must be dismissed. However, to the extent that plaintiff's first, second, and fourth claims brought under 42 U.S.C. § 1983 are considered as being against the City then those claims are also subject to summary judgment. The City of San Bernardino cannot be held liable based on <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658 (1978) ("<u>Monell</u>") where the undisputed facts show that plaintiff cannot establish the existence of a custom, practice or policy of the City of San Bernardino that led to a violation of constitutional rights.

## II. STATEMENT OF FACTS

On or around May 12, 2020, plaintiff was engaged in a dispute with the landlords of his rented residence located at 1353 Parkside Drive in the City of San Bernardino. Compl. ¶¶ 17-18. Plaintiff called 911. Compl. ¶ 19. After officers arrived at the scene, plaintiff was handcuffed and placed in a patrol car, but was ultimately released. Compl. ¶¶ 23, 25, 27. Plaintiff alleges that, during this encounter, he was kicked and subjected to excessively tight handcuffing. Compl. ¶¶ 45-50.

On May 13, 2020, plaintiff alleges that he complained to the San Bernardino Police Department regarding the conduct of SBPD officers from the night before. Compl. ¶ 31. Plaintiff then alleges that another dispute arose with his landlord requiring him to again call 911 multiple times, including to complain that he was bruised from the night before. Compl. ¶¶ 32-35. When SBPD officers responded again to 1353 Parkside Drive, plaintiff was arrested for violation of Penal Code section 148.3(a) (false report of an emergency). Compl. ¶¶ 36-37. Plaintiff alleges that SBPD officers falsely arrested him, retaliated against him for complaining about officer misconduct, and that SBPD failed to train its officers. See Compl. ¶¶ 36, 56, 60-61.

Plaintiff initiated this lawsuit on January 28, 2022. Dkt. No. 1. The City of San Bernardino is the only named defendant. DOE Defendants were dismissed by the Court on May 16, 2022. Dkt. No. 28.

The City of San Bernardino and its Police Department take steps to ensure that its police officers act lawfully and do not violate civil rights when enforcing the law, including by hiring officers that are first subjected to a thorough background check and screening process and regularly training its officers in compliance with the requirements set by the California Commission on Peace Officer Standards and Training ("POST") for certification as peace officers. Facts 9-11.

Such training, now and prior to May 2020, ensures that all personnel are trained in a manner and method that prevents the deprivation of citizens' constitutional rights, including training on the constitutional parameters and legally required levels of justification for detention and arrest of citizens in any given situation, as well as appropriate uses of force in any given situation. Facts 12-13, 14, 16-18. Officers are, and were prior to May 2020, also trained that they may not retaliate against a citizens' exercise of free speech or based on a citizen's complaint against any officer. Fact 15.

Moreover, there does not exist, nor did there exist at the time of the events underlying this action that gives rise to this litigation within the SBPD, nor does the SBPD condone, a custom, practice, or policy of conducting unreasonable searches and seizures, of using excessive force, or of retaliating against citizens who make complaints against officers or exercise their First Amendment rights. Facts 19-29.

### III.  LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party has the initial burden of showing summary judgment is proper by either providing evidence that shows there is no genuine issue of material fact, or by stating the absence of a genuine issue of material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); Celotex Corp., 477 U.S. at 322. An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue is material only if it "affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).

A moving party meets its initial burden of production by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this burden, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact." <u>Id.</u> at 1103 (citing <u>Celotex Corp.</u>, 477 U.S. at 322). If no genuine issue of material fact exists, then summary judgment should be granted. <u>Celotex Corp.</u>, 477 U.S. at 323-24.

## IV. STATEMENT OF LAW

### A. There Is No Evidence That The City Failed To Train Its Officers.

In <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989) ("<u>Harris</u>"), the Supreme Court held that, in some instances, a public entity may be liable under § 1983 for a "failure to train" its police officers. However, the Court held that liability exists only when the failure to train amounts to a "deliberate indifference" to the plaintiff's (or decedent's) civil rights. <u>Id.</u>

Deliberate indifference is a stringent standard requiring "proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011). There must exist a "'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim." <u>Flores v. Cnty. of Los Angeles</u>, 758 F.3d 1154, 1158 (9th Cir. 2014). Essentially, plaintiff here must demonstrate that the City was on notice that a "particular omission" in SBPD's training programs caused the violation of his constitutional rights. <u>Connick</u>, 563 U.S. at 61. Generally, a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train . . ." <u>Id.</u>

Plaintiff can present no such evidence. The evidence clearly shows that the City had proper policies regarding the use of force and abundant and adequate

- 4 -

training programs related thereto. Plaintiff has not, and cannot, assert any similar pattern of constitutional violations by untrained City employees sufficient to put the City on notice of any defect in its training programs or departmental policies. As mentioned above, the City take steps to ensure that its officers act lawfully and do not violate civil rights when enforcing the law. Facts 9-18. And it cannot be disputed that the City has abundant and adequate training programs for its officers related to the avoidance of civil rights violations.

The City ensures that all of its personnel are trained in a manner and method that prevents the deprivation of citizens' constitutional rights, including training on the constitutional parameters and legally required levels of justification for detention and arrest of citizens in any given situation. Facts 9-12. The City ensures that all personnel are trained on proper uses of force in any given situation. Fact 13. The City also trains all personnel regarding preservation of evidence and the impropriety of fabricating, falsifying, destroying, altering, or failing to preserve any evidence. Facts 11, 23. And the City trains its officers against retaliating against citizens who exercise their First Amendment rights or make complaints regarding alleged officer misconduct. Fact 15.

While plaintiff may complain that officers might not have strictly followed the SBPD policies and training guidelines, such a claim does not establish that the City was deliberately indifferent to plaintiff's rights. See Sheehan v. City & Cnty. of San Francisco, 743 F.3d 1211, 1216-1217 (9th Cir. 2014), rev'd on other grounds, City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765 (2015); Harris, 489 U.S. at 391 (noting that "adequately trained deputies occasionally make mistakes," which "says little about the training program or the legal basis for holding the County liable"); Blakenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007) ("evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy").

Plaintiff simply cannot establish any specific training deficiency that led to the alleged misconduct. Thus, plaintiff's third claim for failure to train under 42 U.S.C. § 1983 is subject to summary judgment.

### B. Plaintiff's First, Second, And Fourth Claims Under 42 U.S.C. § 1983 Are Subject To Summary Judgment.

Plaintiff's Complaint lists the third claim for failure to train as being against the City. The first, second, and fourth claims name only DOE defendants that were previously dismissed by this Court (see Dkt. No. 29). Given that, as explained above, plaintiff cannot maintain a failure to train claim against the City, the action should be dismissed. However, to the extent that plaintiff's first, second, and fourth claims are deemed as being brought against the City, these claims fail in any event under Monell.

In Monell v. Department of Social Services of City of New York, the Supreme Court rejected the proposition that a governmental entity may be held liable under a *respondeat superior* theory for an injury caused solely by its employees or agents. 436 U.S. 658, 691 (1978). Specifically, the Supreme Court stated, "the language of § 1983, read against the background of its legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some sort caused a constitutional tort." Id. at 691. Thus, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" Connick, 563 U.S. at 60 (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). As such, plaintiff cannot succeed on § 1983 claims against the City alone absent establishing Monell liability.

To maintain a claim against a governmental entity for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish that the governmental entity had a "custom, practice, and policy" that led to a violation of civil rights. Monell, 436 U.S. at 694. Specifically, Monell requires plaintiff to produce evidence to

establish that: (1) City employee(s) acted under color of law; (2) which deprived plaintiff of his rights under the United States Constitution; and (3) which were done pursuant to an expressly adopted official policy or a longstanding practice or custom of the City.  See 9th CIR. MODEL JURY INSTR. 9.5; Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, plaintiff has not, and cannot, establish that a City policy, custom or practice caused any constitutional injury.  Monell, 436 U.S. at 691.  It cannot be disputed that the City of San Bernardino and its Police Department has, and did have, policies in place regarding unlawful seizures and/or uses of force, as well as abundant and adequate training programs related thereto.  The City takes steps to ensure that its police officers act lawfully and do not violate civil rights when enforcing the law, which includes POST-mandated training, background checks, and scenario-based training.  Facts 9-11.  Further, the City implements policies and procedures to prevent the deprivation of citizens' constitutional rights guaranteed by the Constitution, including the First, Fourth and Fourteenth Amendments.  And the SBPD ensures that all of its personnel are trained regarding the constitutional parameters of their conduct.  Facts 12-18.

There does not exist, nor did there exist at the time of the events underlying this action that gives rise to this litigation, within the City, nor does the SBPD condone, a custom, practice or policy of conducting unreasonable searches and seizures against any person.  Facts 19, 21.  In addition, there does not exist, nor did there exist at the time of the incident, a custom, practice or policy of permitting the use of excessive force against citizens, or of retaliating against citizens based on their exercise of free speech or making complaints regarding officer conduct.  Fact 20.  Nor did there exist at the time of the incident, or at any other time, a custom practice or policy of permitting retaliation against citizens based on race, national origin, nationality, disability, and/or mental health.  Fact 22.

Additionally, there does not exist at the City, nor did there exist at the time of the events underlying this action, a custom, practice or policy of failing to investigate or discipline SBPD officers' misconduct or otherwise ratifying any alleged intentional misconduct of SBPD officers. Facts1 23-28. Nor has there ever been a custom, practice or policy of racial profiling, retaliating or otherwise discriminating against minorities or those with disabilities. Fact 22.

In the absence of a formal policy that is facially unconstitutional, plaintiff must show a practice or custom was adopted in deliberate indifference to the rights asserted herein and directly caused the violation of those rights. Bryan County v. Brown, 520 U.S. 397, 403-04 (1997). Establishing liability based on a custom and practice "may not be predicated on isolated or sporadic incidents [but instead] must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "Only if a plaintiff shows that his injury resulted from a permanent and well-settled practice may liability attach for injury resulting from a local government custom." Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989). A single constitutional violation is ordinarily insufficient to establish a long standing practice or custom. Christie v. Lopa, 176 F.3d 1231, 1235 (9th Cir. 1999).

There is no such evidence here and plaintiff can present no evidence of a long-standing pattern or practice to support a Monell claim on this basis. Moreover, the City properly investigates allegations of police misconduct. As such, there does not exist, nor did there exist at the time of the incident, a custom, practice or policy of permitting the use of excessive force against suspects or unlawfully arresting citizens that complain against police officers. Facts 19-21.

To the extent plaintiff argues that the City or SBPD ratified any unconstitutional conduct, this theory of municipal liability also fails. Ratification under Monell requires that a local government "approve a subordinate's

[unconstitutional] decision or action and the basis for it." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988). A policymaker's "fail[ure] to overrule the unconstitutional discretionary acts of subordinates" does not give rise to Monell liability. <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1348 (9th Cir. 1992) (holding that "[t]he fact that the [final policymaker] did not overrule the [subordinate's discretionary acts] … cannot form the basis of municipal liability under § 1983"). "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" <u>Christie</u>, 176 F.3d at 1239. A plaintiff must show that the triggering decision was the product of "a deliberate choice from among various alternatives" to ratify the conduct in question. See <u>Gillette</u>, 979 F.2d at 1348.

Here, there is no evidence that any City policymaker approved or ratified any unconstitutional conduct. Nor is there evidence that the City conducted a "sham" investigation into any of plaintiff's complaints, or otherwise that any officer engaged in conduct so outrageous that an administrator should have known to do something about it. As such, any ratification theory fails.

## V.  **CONCLUSION**

Defendant City of San Bernardino respectfully requests that the Court grant the instant motion in its entirety and enter judgment in its favor.

DATED: November 9, 2022          CARPENTER, ROTHANS & DUMONT LLP

/s/ *Scott J. Carpenter*

By: _____
Steven J. Rothans, Esq.
Scott J. Carpenter, Esq.
Attorneys for Defendant